**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| JANE DOE (a fictitious name), | No. 4:21-CV-01343 |
| Plaintiff, | (Chief Judge Brann) |
| v. | |
| LOYALSOCK TOWNSHIP SCHOOL DISTRICT, *et al*., | |
| Defendants. | |

## MEMORANDUM OPINION

### APRIL 13, 2022

From September 2013 through the summer of 2014, Jane Doe was sexually assaulted by her middle school basketball coach. She was not the first student this coach groomed and then victimized, and, in 2016, police arrested the coach for sexually abusing Jane Doe and the prior victim. The coach pleaded guilty to felony institutional sexual assault and misdemeanor corruption of minors.

Jane Doe now seeks damages from her school district (i.e., the coach's employer), alleging a violation of Title IX of the Education Amendments of 1972 as well as claims sounding in negligence and intentional infliction of emotion distress. The school district moves to dismiss these claims, focusing on the foreseeability of the coach's abusive conduct. But because Jane Doe adequately pleads that the school district had actual knowledge of the risks the abusive coach posed to female students, most of Jane Doe's claims will be permitted to proceed.

For the reasons provided below, the motion to dismiss is granted in part and denied in part.

## I.      BACKGROUND

In 2013, Jane Doe—then, a thirteen-year-old seventh grade student at Loyalsock Middle School and member of the Middle School girls' basketball team—first met Kelli Vassallo, the basketball team's assistant coach.[1] Hired by Defendant Loyalsock Township School District ("Loyalsock" or the "School District") some years prior, Vassallo was 33 years old.[2] Despite the age difference, Jane Doe and Vassallo became very close. Vassallo regularly texted Jane Doe and invited Jane Doe over to her home to watch television and do schoolwork.[3] She drove Jane Doe to and from school and sporting events.[4] The two often went to the mall and ran errands together.[5]

During this time, Vassallo revealed her true intentions: sexual predation.[6] Vassallo and Jane Doe started doing sleepovers together, and in September 2013, while sitting on a couch at Vassallo's home, Vassallo told Jane Doe she "had feelings" for her and then kissed her on the lips.[7] Things escalated in the following

---

[1]   Doc. 1 ¶ 14.
[2]   *Id.* ¶¶ 14, 16.
[3]   *Id.* ¶ 16.
[4]   *Id.*
[5]   *Id.*
[6]   *Id.* ¶ 17.
[7]   *Id.* ¶¶ 16–17.

weeks, as Vassallo began touching and kissing Jane's Doe's breasts, stomach, and vagina, and later penetrated Jane Doe's vagina using her fingers.[8]

As this abuse continued through Jane Doe's eighth grade year, Loyalsock staff and administrators took notice of Vassallo and Jane Doe's "inappropriate relationship."[9] According to Jane Doe, "[t]here were numerous instances where Vassallo was directly observed to be inappropriately interacting with female students and, in particular, [Jane Doe]."[10] With Vassallo "regularly pick[ing] [Jane Doe] up at school," taking Jane Doe "to and from basketball practice," and having Jane Doe "spend evenings and weekends with [her] at [her] home," Jane Doe alleges that "[c]oaches, teachers, and school administrators all knew or had reason to know that Vassallo was in constant contact with [her]."[11]

After progressing from the Middle School to Loyalsock High School, Jane Doe "disclosed the specifics of Vassallo's abuse to a teacher at [the] High School."[12] Both that teacher and another teacher at the High School "informed [Jane Doe] that they . . . had suspicions regarding Vassallo's relationship with [Jane Doe] and other female students."[13] And when the Loyalsock High School principal "was informed of the specifics of Vassallo's abuse of [Jane Doe], he

---

[8]   *Id.* ¶ 18.
[9]   *Id.* ¶ 23.
[10]   *Id.*
[11]   *Id.*
[12]   *Id.* ¶ 24.
[13]   *Id.*

indicated that he 'had a feeling' about Vassallo and became upset because his daughters were also coached by Vassallo."[14] The principal then expressed to Jane Doe that he "hoped she would not resent him" because "he did everything he could to prevent Vassallo from preying on children she supervised as a coach and employee at Loyalsock Middle School."[15]

Notably, this was not Vassallo's first inappropriate sexual encounter with a female student in the School District. Jane Doe alleges that "Vassallo is known to have sexually abused at least one other female student, Female Victim #1, who attended Loyalsock High School beginning in 2007 and until her graduation in 2011."[16] As with Jane Doe, Vassallo "spent time grooming" Female Victim #1—taking her to dinner and movies, "helping her with homework," "teaching her how to drive," and "constantly contacting her via text or social media."[17] This relationship "turned physical" in 2009, as Vassallo kissed and fingered Female Victim #1 before ultimately raping her.[18] Female Victim #1 was seventeen years old.[19]

Jane Doe alleges that a Loyalsock school counselor learned of Vassallo's abuse of Female Victim #1 "years prior to [Jane Doe] ever attending Loyalsock

---

14  *Id.*
15  *Id.*
16  *Id.* ¶ 20.
17  *Id.* ¶ 21.
18  *Id.*
19  *Id.*

High School—perhaps as early as 2010."[20] After receiving a tip from a third party, ChildLine prepared a report detailing "Vassallo's inappropriate behavior with Female Victim #1" and gave that report to the school counselor.[21] The counselor "indicated she would take further action to investigate, report, and rectify any wrongdoings committed by Vassallo at Loyalsock," but no further action was taken.[22]

In December 2016, police arrested Vassallo for sexually abusing Jane Doe and Female Victim #1.[23] Vassallo pleaded guilty to felony institutional sexual assault and misdemeanor corruption of minors.[24]

In July 2021, Jane Doe initiated the instant suit.[25] She filed the eight-count Complaint against the School District and ten unidentified School District administrators and other agents, alleging a violation of Title IX of the Education Amendments of 1972[26] (Count I), vicarious liability (Count II), negligence (Count III), negligent infliction of emotional distress (Count IV), intentional infliction of emotional distress (Count V), negligent failure to rescue (Count VI), negligent failure to warn (Count VII), and negligence *per se* for violations of the

---

[20]  *Id.* ¶ 25.
[21]  *Id.*
[22]  *Id.*
[23]  *Id.* ¶ 27.
[24]  *Id.*
[25]  Doc. 1.
[26]  20 U.S.C. § 1681(a).

Pennsylvania Child Protective Services Law[27] and Educator Discipline Act[28]

(Count VIII).[29] Loyalsock moved to dismiss the Complaint on October 1, 2021.[30]

That motion has been fully briefed and is now ripe for disposition.[31]

## II.   LAW

Under Federal Rule of Civil Procedure 12(b)(6), the Court dismisses a

complaint, in whole or in part, if the plaintiff fails to "state a claim upon which

relief can be granted." Following the landmark decisions of *Bell Atlantic Corp. v.*

*Twombly*[32] and *Ashcroft v. Iqbal*,[33] "[t]o survive a motion to dismiss, a complaint

must contain sufficient factual matter, accepted as true, to 'state a claim to relief

that is plausible on its face.'"[34] The United States Court of Appeals for the Third

Circuit has instructed that "[u]nder the pleading regime established by *Twombly*

and *Iqbal*, a court reviewing the sufficiency of a complaint must take three steps":

(1) "take note of the elements the plaintiff must plead to state a claim";

(2) "identify allegations that, because they are no more than conclusions, are not

entitled to the assumption of truth"; and (3) "assume the[] veracity" of all "well-

---

[27]   23 P.S. § 6311.

[28]   24 P.S. §§ 2070.1 *et seq.*

[29]   Doc. 1 ¶¶ 40–102.

[30]   Doc. 10.

[31]   Doc. 11; Doc. 12-1; Doc. 13.

[32]   550 U.S. 544 (2007).

[33]   556 U.S. 662 (2009).

[34]   *Id.* at 678 (quoting *Twombly*, 550 U.S. at 570).

pleaded factual allegations" and then "determine whether they plausibly give rise to an entitlement to relief."[35]

## III.   ANALYSIS

### A.   Title IX (Count I)

Loyalsock first argues that Jane Doe's Title IX claim should be dismissed because she "fails to allege any 'appropriate person' at the [School] District had 'actual knowledge' of Vassallo's abuse."[36] Specifically, Loyalsock dismisses Jane Doe's allegations as "just legal conclusions that are not based on any facts."[37] But that's simply not true.

Title IX provides that "[n]o person . . . shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance."[38] As the Third Circuit affirmed in *Bostic v. Smyrna School District*, "Title IX encompasses sexual harassment of a student by a teacher and is enforceable through an implied right of action for damages against a school district."[39]

 To establish a Title IX claim against a school district based on sexual abuse by a teacher, a plaintiff "need only show that (1) an appropriate person at the

---

[35] *Connelly v. Lane Construction Corp.*, 809 F.3d 780, 787 (3d Cir. 2016) (internal quotations and citations omitted).

[36] Doc. 11 at 5.

[37] Doc. 13 at 3.

[38] 20 U.S.C. § 1681(a).

[39] 418 F.3d 355, 359–60 (3d Cir. 2005) (citing *Franklin v. Gwinnett County Public Schools*, 503 U.S. 60, 75–76 (1992)).

school (2) had actual knowledge of facts indicating a substantial danger to students and (3) acted with deliberate indifference to that danger."[40] The Supreme Court of the United States defines an "appropriate person" as "an official of the recipient entity with the authority to take corrective action to end the discrimination."[41] This typically includes "the superintendent, assistant superintendent, principal, and assistant principal."[42]

Further, for "actual knowledge," a plaintiff need not show that the school district "knew about what [the abusive teacher] was doing to her personally"[43]; rather, "[a]n educational institution has 'actual knowledge' if it knows the underlying facts, indicating sufficiently substantial danger to students, and was therefore aware of the danger."[44] Put differently, although "the known acts must show more than a mere *possibility* of abuse," because "the standard is couched in terms of 'danger,' it necessarily contemplates liability where school officials suspect, but cannot be sure of, abusive conduct."[45]

Jane Doe highlights three allegations relevant to the "actual knowledge" analysis: (1) the School District "was notified about Vassallo's specific predatory

---

[40] *Does v. Southeast Delco School District*, 272 F. Supp. 3d 656, 688 (E.D. Pa. 2017) (citing *Bostic*, 418 F.3d at 361).

[41] *Gebser v. Lago Vista Independent School District*, 524 U.S. 274, 290 (1998).

[42] *B.W. v. Career Technology Center of Lackawanna County*, 422 F. Supp. 3d 859, 877 (M.D. Pa. 2019) (Mannion, J.).

[43] *Kobrick v. Stevens*, 2014 WL 4914186, at *12 (M.D. Pa. Sept. 30, 2014) (Mannion, J.).

[44] *Bostic*, 418 F.3d at 361 (citing 3C Fed. Jury Prac. & Instr. § 177.36 (5th ed. 2001)).

[45] *Southeast Delco School District*, 272 F. Supp. at 689.

and pedophilic tendencies after someone reported Vassallo's inappropriate behavior with Female Victim #1 via Child Line"[46]; (2) teachers at the Middle and High Schools "were suspicious of Vassallo and [Jane Doe] averred that there were multiple instances in which Vassallo was observed by [the School District's] staff to be acting inappropriately toward [Jane Doe]"[47]; and (3) the Loyalsock High School principal "was informed of the specifics of Vassallo's sexual abuse of [Jane Doe] and admitted that he 'had a feeling' about Vassallo and claimed he did what he could to protect [Jane Doe]."[48] The Defendants challenge the sufficiency of these allegations, but the Court finds these objections unpersuasive.

First, the Defendants argue that the alleged ChildLine report in 2010 concerning Vassallo's conduct towards Female Victim #1 does not establish actual knowledge by an appropriate person at the school because (a) "simple reports of inappropriate behavior are not enough,"[49] and (b) the alleged recipient of the report—a "school counselor"[50]—does not fall "within the category of an 'appropriate person.'"[51] If the allegation that a school counselor received a report of "Vassallo's inappropriate behavior with Female Victim #1 some years prior"

---

[46] Doc. 12 at 11 (citing Doc. 1 ¶¶ 25, 52).

[47] *Id*. (citing Doc. 1 ¶¶ 23–24).

[48] *Id*. at 10 (citing Doc. 1 ¶ 24).

[49] Doc. 11 at 7 (citing *Vaird v. School District of Philadelphia*, 2000 WL 576441, at *3 (E.D. Pa. May 12, 2000)).

[50] Doc. 1 ¶ 25.

[51] Doc. 11 at 8–9; *see also* Doc. 13 at 6–7 (same) (citing *Warren ex rel. Good v. Reading School District*, 278 F.3d 163 (3d Cir. 2002)).

was the only pleading relevant to the School District's actual knowledge, that may well be insufficient. But it's not. The Court must consider this allegation alongside the additional pleadings that purportedly show actual knowledge by appropriate people in the School District—namely, the allegations that teachers and administrators were aware of the risks Vassallo posed to Jane Doe and other girls at the Middle School.

Second, the Defendants argue that Jane Doe's allegation about what the Middle and High School teachers and staff knew about the risk Vassallo posed to Jane Doe and other girls is "nothing more than a conclusion—there are no specific facts describing (a) what exact inappropriate actions occurred, (b) what inappropriate actions were actually observed by Loyalsock staff, and (c) the exact identity of the Loyalsock staff member that observed inappropriate actions."[52] Although it is true that the relevant pleadings lack these specific details, the absence of this information does not render the pleadings meaningless or inconsequential. Indeed, less particularized allegations of knowledge appear often in lawsuits regarding child sexual abuse by school employees, and courts routinely consider these allegations relevant to the "actual knowledge" inquiry.

In *B.W. v. Career Technology Center of Lackawanna County*, male students brought independent Title IX claims against their school districts and a separate

---

[52]   Doc. 13 at 3 (cleaned up).

technology center where they took automotive technology classes based on alleged sexual abuse by an instructor at the technology center.[53] In their complaints, the plaintiffs alleged that a teacher "told minor students in the class that he saw [the abusive instructor] acting inappropriately with them, that the conduct was 'not right,' and that he would 'keep an eye on him.'"[54] The abuse continued, and the students advised the teacher of the abuser's "continued improper conduct."[55] The teacher then reported the instructor's behavior to administrators of the technology center—but not administrators of the school districts.[56] For the school districts, the complaints note only that the instructor's abusive conduct was "open, widespread and known by staff and administrators of [the] defendant school districts."[57] The complaints did not detail what exact inappropriate actions were observed or which school district administrators knew of the abuse.[58] Nevertheless, the court found "the complaints adequately allege[d] actual knowledge by an appropriate person at [the technology center] *and the school districts* of the substantial danger to minor male students posed by [the instructor's] widespread and repetitive sexually abusive conduct during the course of a school year."[59]

---

[53]  422 F. Supp. 3d at 872–75.
[54]  *Id*. at 873.
[55]  *Id*.
[56]  *Id*. at 873–74.
[57]  *Id*. at 874.
[58]  *Id*.
[59]  *Id*. at 881 (emphasis added).

Similarly, in *Kobrick v. Stevens*, a student brought a Title IX claim against her school district based on sexual abuse by a middle school music instructor.[60] The student alleged that the instructor's supervisor "witnessed [the instructor] having inappropriate physical contact with the [student]," and that other "school teachers would allow [her] to be removed from class to meet [the instructor] and they would be 'openly together' in sight of school personnel."[61] Further, the student's complaint provided that the instructor previously "engaged in similar conduct with another minor female student" when at a separate school, and that both the current and former school districts "knew or should have known about [the instructor's] conduct."[62] Based on these allegations, the court denied the defendants' motion to dismiss the Title IX claim, explaining that "[w]hether or not the plaintiff can prove her Title IX claim, the court finds that she is able to proceed with the claim at this early stage of the proceedings."[63]

Here, Jane Doe alleges that "Vassallo's inappropriate relationship with [her] was known to the staff and administration of Loyalsock," as there "were numerous instances where Vassallo was directly observed to be interacting inappropriately with female students and, in particular, [Jane Doe]"—namely, "Vassallo would regularly pick [Jane Doe] up at school, take [Jane Doe] to and from basketball

---

[60]   2014 WL 4914186.
[61]   *Id*. at *2.
[62]   *Id*.
[63]   *Id*. at *12.

practice," and have Jane Doe "spend evenings and weekends with [her] at [her] home."[64] As held in *Career Technology Center* and *Kobrick*, allegations that teachers and administrators witnessed an abusive employee's inappropriate behavior towards students help demonstrate that the school district had actual knowledge of the risk of abuse.

Further, Jane Doe notes that when she "disclosed the specifics of Vassallo's abuse to a teacher at Loyalsock High School, that Loyalsock employee and another teacher at Loyalsock informed [Jane Doe] that they both had suspicions regarding Vassallo's relationship with [her] and other female students."[65] These alleged "suspicions," considered in isolation, may be insufficient to establish that an appropriate person at Loyalsock had actual knowledge of the risk Vassallo posed to students.[66] But together they support Jane Doe's assertion that "Loyalsock staff possessed knowledge or had reason to know about Vassallo's actions."[67]

Finally—and most importantly—we have the allegations about the High School principal. Loyalsock claims that Jane Doe's "characterization of a lone, sympathetic comment by a principal in the [School] District is a stretch," arguing

---

[64]   Doc. 1 ¶ 23.

[65]   *Id.* ¶ 24.

[66]   *See E.R. v. Lopatcong Township Middle School*, 2015 WL 4619665, at *3 (D.N.J. July 31, 2015) (dismissing Title IX claim regarding sexual abuse by school employee because "[a]llegations that persons had 'suspicions' or that [the abuser] was disciplined for being too friendly to students does not rise to the level of actual knowledge").

[67]   Doc. 12-1 at 10; *cf. Career Technology Center*, 422 F. Supp. 3d at 894 ("Plaintiffs will be given the chance to conduct discovery to determine what exactly [the other teachers] . . . knew about [the abusive instructor's] improper conduct in his class, when they knew it, and whether he, or any staff, reported their observations and suspicions.").

that "[t]he principal's expression that he 'had a feeling' does not establish any awareness on the part of the [School] District of 'known acts' of discrimination."[68] But Loyalsock ignores the second half of this allegation. After telling Jane Doe that he "had a feeling" about Vassallo, the principal allegedly stated that "he did everything he could to prevent Vasallo from preying on children she supervised as a coach and employee at [the] Middle School."[69] Construed in a light most favorable to Jane Doe, the principal's intimation that he took steps to shield Jane Doe and other girls at the Middle School from Vassallo's suspected sexual abuse reasonably suggests "that he possessed knowledge about the danger she posed to [Jane Doe] and other children"—particularly given Loyalsock's receipt of the ChildLine report about Vassallo's prior inappropriate behavior with a female student.[70]

Taken together and accepted as true, Jane Doe's allegations about the 2010 ChildLine report and the observations and admissions by School District staff—in particular, the High School principal—demonstrate than an appropriate person had actual knowledge that Vassallo posed a substantial danger to students. Whether the evidence adduced in discovery substantiates these allegations remains to be seen,

---

[68] Doc. 13 at 4.
[69] Doc. 1 ¶ 24.
[70] Doc. 12-1 at 10.

but Jane Doe's Title IX claim survives at this early stage of the proceedings.[71] Loyalsock's motion to dismiss Count I is denied.

## B.    Vicarious Liability (Count II)

Next, Loyalsock argues that it is not vicariously liable for Vassallo's actions because "she was engaging in conduct far removed from the scope of her employment."[72] Jane Doe disagrees, arguing that Vassallo's abuse falls "within the scope and course of her employment" as a basketball coach because she used the access this job provided her to Loyalsock student athletes to "groom and sexually abuse" Jane Doe.[73] Alternatively, Jane Doe argues Loyalsock can be held vicariously liable for Vassallo's abuse because the School District effectively "ratified" Vassallo's conduct by "create[ing] an environment in which [Jane Doe] was sexually abused" and "fail[ing] to prevent future harm."[74] On this, the Court agrees with Loyalsock.

Under Pennsylvania law, an employer may be held vicariously liable for the tortious acts of its agent if the acts "either fall within the scope of [the agent's]

---

[71] *See Career Technology Center*, 422 F. Supp. 3d at 882 ("[T]he parties will be able to request more information during discovery as to whom [the teacher] reported [the abusive instructor's] wrongful conduct and whether the persons at . . . the school districts were appropriate persons."); *Kobrick*, 2014 WL 4914186 at *12 ("Whether or not the plaintiff can prove her Title IX claim, the court finds she is able to proceed with the claim at this early stage of the proceedings.").

[72] Doc. 11 at 13.

[73] Doc. 12-1 at 18.

[74] *Id*. at 18–19.

authority, or, if unauthorized, were ratified by the principal."[75] In certain circumstances, an employer's liability "may extend even to intentional or criminal acts committed by the [agent]."[76]

First, the Court must determine whether Vassallo's abuse was within the scope of her employment. For this analysis, "Pennsylvania follows the Restatement (Second) of Agency § 228."[77] Per the Restatement, an agent's conduct "is within the scope of employment if, but only if: (a) it is the kind he is employed to perform; (b) it occurs substantially within the authorized time and space limits; (c) it is actuated, at least in part, by a purpose to serve the master, and (d) if force is intentionally used by the servant against another, the use of force is not unacceptable by the master."[78] Actions by an agent fall outside "the scope of employment if [they are] different in kind from that authorized, far beyond the authorized time or space limits, or too little actuated by a purpose to serve the master."[79]

Applying this standard, "Pennsylvania intermediate courts have consistently held that sexual abuse of minors falls outside an employee's scope of employment, because such acts of abuse are not the kind and nature he/she was employed to

---

[75] *Alumni Association, Delta Zeta Zeta of Lambda Chi Alpha Fraternity v. Sullivan*, 535 A.2d 1095, 1100 n.2 (Pa. Super. 1987).

[76] *Fitzgerald v. McCutcheon*, 410 A.2d 1270, 1271 (Pa. Super. 1979).

[77] *Doe 6 v. Pennsylvania State University*, 982 F. Supp. 2d 437, 441 (E.D. Pa. 2013) (citing *Fitzgerald*, 410 A.2d at 1272).

[78] Restatement (Second) of Agency § 228(1).

[79] *Id*. § 228(2).

perform and not for the employer's benefit."[80] Accordingly, the Court agrees with Loyalsock that although Vassallo's abuse of Jane Doe, "which was outrageous and criminal," may have occurred in the *course* of Vassallo's employment, "it falls outside of the *scope* of that employment," as it "was completely divorced from her employer's goals."[81]

Second, Jane Doe raises the alternative argument that Loyalsock can be held vicariously liable for Vassallo's abuse because the School District "ratified" Vassallo's conduct.[82] But under the Restatement (Second) of Agency, "[r]atification is the affirmance by a person of a prior act which did not bind him *but which was done or professedly done on his account*, whereby the act . . . is given effect as if originally authorized by him."[83] Jane Doe does not cite, and the Court is not aware of, any legal authority holding a school district vicariously liable for sexual assault by a school employee based on the district's ratification of

---

[80]  *Doe 6*, 982 F. Supp. 2d at 442 (citing *Sanchez by Rivera v. Montanez*, 645 A.2d 383, 391–92 (Pa. Commw. 1994) (finding daycare was not vicariously liable for an employee's acts of molestation because the "actions were conducted for personal reasons only and were utterly outrageous in manner"); *R.A. ex rel. N.A. v. First Church of Christ*, 748 A.2d 692, 700 (Pa. Super. 2000) (rejecting vicarious liability claim against a church based on its minister's sexual abuse of plaintiff because "[n]othing about [the minister's] sexual abuse of [the plaintiff] had any connection to the kind and nature of his employment as a minister[,] . . . [n]or was [the] abusive behavior actuated by any purpose of serving the Church")); *see also Burdyn v. Old Forge Borough*, 2016 WL 5844863, at *6–7 (M.D. Pa. Oct. 3, 2016) (Mariani, J.) (finding that volunteer fire company could not be held vicariously liable for sexual abuse by members because the abuse "cannot be considered to have been undertaken in any way as part of either defendant's employment, nor can it be said to even plausibly have been undertaken to further the employer's interests").

[81]  Doc. 13 at 12–13 (emphasis added).

[82]  Doc. 12-1 at 18–19.

[83]  Restatement (Second) of Agency § 82 (1985) (emphasis added).

the abuse.[84] Indeed, the Court struggles to conceive of any circumstances in which one could.

Here, Vassallo's abuse of Jane Doe was not for Loyalsock's benefit or done on Loyalsock's account—this "outrageous and criminal" conduct served only Vassallo's personal, prurient purposes.[85] As such, per the Restatement (Second) of Agency, Vassallo's sexually abusive conduct fell outside the scope of her employment and was not ratified by Loyalsock. Because this legal deficiency cannot be remedied by any additional factual pleadings, Jane Doe's claim for vicarious liability (Count II) is dismissed with prejudice.

## C.    Negligence Claims (Counts III, VI, and VII)

Jane Doe asserts several negligence causes of action based on Loyalsock's failure to, among other things, (a) exercise reasonable care in hiring, supervising, and monitoring its employees[86]; (b) "rescue [Jane Doe] after placing her in a position of harm"[87]; and (c) "warn[] students and the public of the risks posed by Vassallo."[88] Loyalsock moves to dismiss these claims, but the Court finds Loyalsock's arguments unavailing.

---

[84]  *Doe 6*, 982 F. Supp. 2d at 445–46 ("PSU correctly asserts that none of the cases discussing vicarious liability for sexual abuse consider the possibility of ratification," and the plaintiff "does not supply any case in which a court has held an employer vicariously liable for an employee's 'outrageous act' based on ratification grounds.").

[85]  Doc. 13 at 12–13.

[86]  Count III – Negligence. Doc. 1 ¶¶ 66–81.

[87]  Count VI – Negligent Failure to Rescue. Doc. 1 ¶¶ 86–89.

[88]  Count VII – Failure to Warn. Doc. 1 ¶¶ 90–95.

To prove negligence in Pennsylvania, a plaintiff must establish the existence of "a duty to conform to a certain standard for the protection of others against unreasonable risks; the defendant's failure to conform to that standard; a causal connection between the conduct and the resulting injury; and actual loss or damage to the plaintiff."[89] An employer owes a duty "to exercise reasonable care in selecting, supervising, and controlling employees."[90] Courts likewise recognize that "a duty to rescue exists 'when the state fails, under sufficiently culpable circumstances, to protect the health and safety of the citizen to whom it owes an affirmative duty,'"[91] and "there are situations where an employer may have a duty to warn others about an employee or former employee."[92] The scope of these duties, however, extends only "to those risks that are reasonably foreseeable under the circumstances."[93]

In asking the Court to dismiss these negligence claims, Loyalsock focuses solely on the foreseeability of Vassallo's conduct. Specifically, Loyalsock argues that Jane Doe "fails to allege facts that would plausibly show that the [it] knew or

---

[89] *Brewington for Brewington v. City of Philadelphia*, 199 A.3d 348, 355 (Pa. 2018).

[90] *First Church*, 748 A.2d at 697.

[91] *Beswick v. City of Philadelphia*, 2001 WL 210292, at *11 (E.D. Pa. Mar. 1, 2001) (quoting *D.R. v. Middle Bucks Area Vocational Technical School*, 972 F.2d 1364, 1369 (3d Cir. 1992) (en banc) *cert. denied*, 506 U.S. 1079 (1993)).

[92] *Smith v. National Railroad Passenger Corp. (Amtrak)*, 25 F. Supp. 2d 578, 579 (E.D. Pa. 1998) (citing *Wisniewski v. Johns-Manville Corp.*, 812 F.2d 81, 86 (3d Cir. 1987)); *see also Coath v. Jones*, 419 A.2d 1249, 1252 (Pa. Super. 1980) (recognizing duty to warn customer about risk of danger posed by former employee with violent propensities).

[93] *Allen v. Fletcher*, 2009 WL 1542767, at *3 (M.D. Pa. June 2, 2009) (Caputo, J.) (citing *Roche v. Ugly Duckling Car Sales, Inc.*, 879 A.2d 785, 790 (Pa. Super. 2005)).

should have known about Vassallo's abusive behavior," and "[w]ithout knowledge of misbehavior by Vassallo comparable to her offenses against [Jane] Doe, or of Vassallo's propensity for those crimes, those offenses were not foreseeable."[94] According to Loyalsock, because Vassallo's abuse of Jane Doe was not foreseeable, Jane Doe cannot establish that the School District "failed to exercise reasonable care."[95] But, as discussed, the facts alleged demonstrate that Vassallo's abuse was foreseeable—and arguably foreseen. Loyalsock's motion to dismiss Counts III, VI, and VII is therefore denied.

### D.    Negligent Infliction of Emotional Distress (Count IV)

Loyalsock next asks the Court to dismiss Jane Doe's negligent infliction of emotional distress ("NIED") claim, arguing that the claim does not fall under any of the four NIED factual scenarios recognized by Pennsylvania courts.[96] Again, the Court disagrees.

Pennsylvania law recognizes a claim for NIED in the following scenarios: "(1) situations where the defendant had a contractual or fiduciary duty toward the plaintiff; (2) the plaintiff was subjected to a physical impact; (3) the plaintiff was in a zone of danger, thereby reasonably experiencing a fear of impending physical injury; or (4) the plaintiff observed a tortious injury to a close relative."[97] A

---

[94]    Doc. 11 at 14–15.
[95]    *Id*. at 15.
[96]    *Id*.
[97]    *Toney v. Chester County Hospital*, 961 A.2d 192, 197–98 (Pa. Super. 2008), *aff'd*, 36 A.3d 83 (Pa. 2011).

plaintiff seeking recovery for NIED must also establish the elements of a negligence claim.[98]

Here, Jane Doe alleges that Vassallo "touched and kissed [her] breasts, stomach, and vagina" and used her fingers to penetrate Jane Doe's vagina,[99] resulting in "physical and emotional injuries."[100] Because Jane Doe's negligence causes of action survive dismissal and Loyalsock's alleged negligence resulted in her being subjected to a physical impact, she has stated a plausible claim for NIED.[101] Accordingly, Loyalsock's motion to dismiss Jane Doe's NIED claim (Count IV) is denied.

### E.   Intentional Infliction of Emotional Distress (Count V)

Loyalsock also moves to dismiss Jane Doe's intentional infliction of emotional distress ("IIED") claim, arguing that under Pennsylvania law, local agencies may not be held liable for international torts.[102] Loyalsock asserts that the Pennsylvania Political Subdivision Tort Claims Act ("PTSCA"), which was "recently amended to include an exception to permit suits against local agencies

---

[98]   *Id.*

[99]   Doc. 12-1 at 20 (citing Doc. 1 ¶ 18).

[100]  Doc. 1 ¶ 36.

[101]  *See Court v. Loews Philadelphia Hotel, Inc.*, 2017 WL 569522, at *1–3, 7 (E.D. Pa. Feb. 13, 2017) (holding that the plaintiff's allegations that a masseuse, employed by defendants, touched/rubbed the plaintiff's genitals and groped the plaintiff's buttocks stated a plausible claim for NIED under the second factual scenario—that is, due to the defendant's negligence, the plaintiff was subjected to a "physical impact.").

[102]  Doc. 11 at 10 (citing 42 Pa. C.S. § 8542(a)(2); *Overstreet v. Borough of Yeadon*, 475 A.2d 803, 803–04 (Pa. Super. 1984)).

and their employees in cases involving sexual abuse," permits only claims sounding in negligence—intentional torts fall outside the exception.[103]

Jane Doe disagrees, arguing that the recently adopted amendment to the PTSCA "enumerates an exception for sexual abuse caused by a local agency's negligent acts or omissions."[104] But, by her own argument, Jane Doe defeats this cause of action.

To sustain an IIED claim, a plaintiff must establish that the defendant's tortious conduct was *intentional*; emotional distress caused by a defendant's *negligence* supports only a cause of action for NIED. Because the relevant exception is limited to injuries "caused by the *negligent* acts of the local agency," Loyalsock has it right: Jane Doe's "negligence claims against the school district fall under [this] exception for the PTSCA," but "the claim for [IIED] does not."[105] Jane Doe's IIED claim (Count V) is therefore dismissed with prejudice.

---

[103] *Id.* (citing 42 Pa. C.S. § 8542(b)(9); *Palmer v. Bartosh*, 959 A.2d 508, 512 n.3 (Pa. Commwlth. 2008)).

[104] Doc. 12-1 at 13.

[105] Doc. 11 at 10; *c.f. Doe by Brown v. Harrisburg School District*, 2020 WL 4584372, at *5 (M.D. Pa. Aug. 10, 2020) (Connor, J.) ("Because the District is a local agency as contemplated by the PSTCA, it is immune from liability for intentional torts. Hence, we will dismiss plaintiffs' IIED claim against the District."); *Klumb v. Nazareth Area School District*, 425 F. Supp. 2d 622, 636 (E.D. Pa. 2004) (finding "that none of the exceptions in 42 Pa. C.S.A. § 8542 apply in this case because the actions alleged are intentional rather than negligent"); *Palmer*, 959 A.2d at 512 n.3 ("The [PTSCA] waives governmental immunity only for certain negligent acts of the agency or its employees; where the employee's conduct is intentional in nature, the local agency retains its governmental immunity.").

## F.      Negligence *Per Se* (Count VIII)

Lastly, Jane Doe brings a claim for negligence *per se* based on Loyalsock's alleged violations of 23 Pa. C.S. § 6311(a) and 24 P.S. § 2070.1.[106] Loyalsock argues that Jane Doe "fails to allege facts which could lead to a plausible inference that the [School] District violated either statute."[107] The Court finds Loyalsock persuasive as to the latter statute, but not the former.

Under 23 Pa. C.S. § 6311, a "school employee" must "make a report of suspected child abuse . . . if the person has reasonable cause to suspect that a child is a victim of child abuse."[108] Reiterating its arguments against Jane Doe's Title IX claim, Loyalsock asserts that the Complaint lacks the facts necessary to establish that any school employee had "reasonable cause" to believe that a child has been abused.[109] But as Jane Doe correctly responds, based on the alleged "instances where Vassallo was observed by Loyalsock staff to be inappropriately interacting with [Jane Doe]" and the "Child Line report concerning Vassallo's relationship with Female Victim #1," a reasonable jury could find that Loyalsock had "reasonable cause" to believe Jane Doe was a victim of abuse: "The combined knowledge that teachers, coaches, and/or school administrators possessed regarding the amount of time [Jane Doe] spent with Vassallo and her inappropriate

---

[106] Doc. 1 ¶¶ 96–102.
[107] Doc. 11 at 11.
[108] 23 Pa. C.S. § 6311(a)(4).
[109] Doc. 11 at 11.

conduct towards [Jane Doe] illustrates Loyalsock had 'reasonable cause to suspect' Vassallo as a danger."[110]

That said, reasonable cause to suspect child abuse is not the same thing as an allegation of child abuse. Section 2070.9a of the Pennsylvania Educator Discipline Act requires a chief school administrator to file notice with the Pennsylvania Department of Education concerning "allegations . . . than [an] educator has: (i) committed sexual abuse or exploitation involving a child or student; or (ii) engaged in sexual misconduct with a child or student."[111] As Loyalsock notes, "[t]here are no facts offered that show that allegations of sexual abuse were brought to the school administration prior to [Jane Doe] herself coming forward."[112] Although the Complaint provides that "a Loyalsock school counselor received a report of Vassallo's inappropriate behavior with Female Victim #1," it contains no detail on what this "inappropriate behavior" entailed.[113] Similarly, the Complaint does not contain specific allegations of Vassallo's abuse of Jane Doe before Jane Doe came forward.[114]

---

[110] Doc. 12-1 at 15; *c.f. Doe v. Liberatore*, 478 F. Supp. 2d 742, 763–64 (M.D. Pa. 2007) (Caputo, J.) (finding that "a reasonable jury could find that . . . Defendants had 'reasonable cause to suspect' that [a priest] was sexually abusing Plaintiff" because they "were informed of [the priest's] past incidents" involving other boys, "had been informed of the fact that Plaintiff was sleeping in [the priest's] bedroom in the Rectory," and "several people had voiced their own concerns and suspicions regarding the relationship between [the priest] and Plaintiff").

[111] 24 P.S. § 2070.9a(a)(3).

[112] Doc. 13 at 11.

[113] Doc. 1 ¶ 25.

[114] *See id.* ¶¶ 23–24.

The pleadings here establish that Loyalsock teachers and administrators had reasonable cause to suspect that Jane Doe was the victim of child abuse; however, they fall short of establishing any prior allegations of sexual abuse. Accordingly, to the extent Jane Doe's negligence *per se* claim is premised on an underlying violation of 23 Pa. C.S. § 6311, it may proceed. But, as alleged, Count VII cannot rely on 24 P.S. § 2070.1 as a predicate.

## IV.   CONCLUSION

The harm at issue here is not in dispute: a Loyalsock Middle School basketball coach sexually abused Jane Doe in 2013 and 2014. The primary question before the Court is whether this abuse was foreseeable. Because Jane Doe pleads facts that, taken together and accepted as true, demonstrate the School District's actual knowledge of the risk of abuse, most of her claims may proceed.

An appropriate Order follows.

BY THE COURT:


*s/ Matthew W. Brann*
Matthew W. Brann
Chief United States District Judge