IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JANE DOE, | No. 4:21-CV-01343 |
| Plaintiff, | (Chief Judge Brann) |
| v. | |
| LOYALSOCK TOWNSHIP SCHOOL DISTRICT, | |
| Defendant. | |

**MEMORANDUM OPINION**

**APRIL 4, 2024**

## I. BACKGROUND

Currently before the Court is Plaintiff Jane Doe's Motion to Compel Inspection of Electronically Stored Information.[1] Doe's Motion is the latest salvo in an ongoing discovery dispute regarding Defendant Loyalsock Township School District's document productions, which itself is just one of several such disputes that the Court has been asked to mediate.

Doe initiated this litigation on July 30, 2021 alleging the District failed to protect her from being sexually abused at 13 years old by her middle school basketball coach, Kelli Vassallo.[2] In September 2021, Doe served requests upon the District for records

---

[1] Mot. to Compel, Doc. 40.
[2] Compl., Doc. 1.

relating to Vassallo.[3] After resolving the District's Motion to Dismiss,[4] the Court hosted the parties for a Rule 16 conference[5] and discovery commenced in August 2022.[6] In the intervening months, Doe received, pursuant to a subpoena, documents from the Pennsylvania State Police ("PSP") regarding, among other things, a report made by the District as to allegations that Vassallo maintained an inappropriate relationship with a student in 2010.[7]

However, Doe did not receive any such documents from the District itself. In April 2023, the District represented that it was reluctant to produce responsive documents out of concerns for the non-party student-victim, suggesting that it was necessary to first obtain a FERPA[8] release from the 2010 victim before productions could be made.[9] Over the course of several weeks, the District ignored Doe's attempts to connect it with the 2010 victim so that a release could be provided.[10] The District then changed tack in June 2023 asserting that the release would not lead to the production of any related records because no such records were in the District's possession.[11] In September 2023, PSP made a supplemental production to Doe.[12]

---

[3] Those requests were perhaps premature, as the District's Motion to Dismiss was pending and a Rule 26 conference had not yet been held. June 28, 2022 Letter to Court, Doc. 17.
[4] Apr. 13, 2022 Ord., Doc. 14.
[5] Jul. 25, 2022 Ord., Doc. 18.
[6] Aug. 16, 2022 Ord., Doc. 21.
[7] Oct. 17, 2023 Letter to Court, Doc. 31, at 1-2.
[8] Family Educational Rights and Privacy Act, 20 U.S.C. § 1232g.
[9] Supp. Br., Doc. 41, at 10.
[10] Oct. 17 Letter at 2 n.1.
[11] *Id.*
[12] *Id.* at 3.

Included in that production was a typed statement from District Director of Student Services Christine Herman, summarizing the steps of her involvement in reporting Vassallo to the Police, as well as meetings conducted among multiple administrators, including then-Superintendent Robert Grantier, then-Business Manager and now Superintendent Gerald McLaughlin, Loyalsock High School Principal Dr. Matthew Reitz, and District Solicitor Gene Yaw.[13] No related records have been produced by the District to date.

At Doe's request, the Court hosted the parties for a telephonic status conference in an attempt to resolve the dispute on October 27, 2023.[14] As the Court was under the impression that the dispute had been resolved, and that the District would supplement their discovery responses as had been discussed, the Court did not see the need to issue a written Order following the conference as to the issue. However, a month later, Doe again requested the Court's assistance in mediating the still ongoing discovery dispute.[15] On December 11, 2023, the Court again hosted the parties for a telephonic status conference, during which it was agreed that the District would produce an affidavit detailing its attempts to locate and produce the requested records.

On December 18, 2023, the District provided to Doe the affidavit of Eric Gee, the District's Technology Director.[16] Gee attested that he searched the District's server

---

[13] *Id.*
[14] Oct. 20, 2023 Ord., Doc. 33. Also discussed during the status conference was a dispute regarding the failure to timely schedule depositions. Nov. 28, 2023 Letter to Court, Doc. 35.
[15] *Id.*
[16] Gee Aff., Doc. 40-5.

for relevant emails based on a set of eight search terms.[17] The search, which was limited to the time periods of May 5, 2009 through March 10, 2012 and August 3, 2021 through December 16, 2022, yielded approximately 50,000 emails. Gee noted that he used additional key words such as counselors, principals, athletics, and issues concerning children to further filter the results, but did not provide any examples of such terms.[18] He attested that this search did not produce any documents relevant to Doe's claims.[19]

Gee further indicated that certain records may have been lost due to a virus which affected the District's server "in 2016 or 2017" that led to a loss of "all backed-up emails for the time period 2012 through part of 2021."[20] He also attested that "on or about December 17, 2022, the District changed e-mail providers, which resulted in the corruption of archived files, that rendered some e-mails unrecoverable."[21]

Following receipt of Gee's affidavit, Doe retained Brian Wolfinger, "an expert in Digital Forensics, Electronic Evidence, and Electronic Discovery tools, techniques, and methodologies."[22] Wolfinger opines that the search described by Gee "is deficient and cannot be relied upon as a through and diligent search."[23] In so concluding, Wolfinger notes that Gee broadly fails to describe key details of his search, such as how the search was conducted and the sort of files that the search targeted.[24] He also faults

---

[17] *Id.* ¶ 3.
[18] *Id.* ¶ 6.
[19] *Id.* ¶ 7.
[20] *Id.* ¶ 9.
[21] *Id.* ¶ 10.
[22] Wolfinger Aff., Doc. 40-6.
[23] *Id.* ¶ 6.
[24] *Id.* ¶¶ 6(B)-(D).

Gee for failing to provide any details regarding the lost files, including any attempts to recover them.[25] Finally, he suggests that it would take a trained eDiscovery review attorney six months to review the universe of documents Gee purports to have reviewed.[26]

Based on the perceived deficiencies in Gee's affidavit and stated search methodology, Doe renewed an earlier Federal Rule of Civil Procedure 34(a)(2) request to permit Doe to conduct a search of the email servers, staff messaging platform servers, and digital or physical record storage for responsive records. Following an objection by the District, Doe filed a Motion to Compel Forensic Inspection of the District's Electronically Stored Information, which is now fully briefed and ripe for disposition.

## II.   LAW

Federal Rule of Civil Procedure 34 provides that a party may serve upon any other party a request to "produce any permit the requesting party or its representative to inspect, copy, test, or sample . . . any designated documents or electronically stored information."[27] Due to the intrusive nature of forensic examination of ESI, it is "generally considered a 'drastic discovery measure.'"[28] Accordingly, before compelling a forensic examination, courts are to consider "the 'significant privacy and confidentiality concerns' implicated, including that the electronic information might

---

[25] *Id.* ¶¶ 6(E)-(H)
[26] *Id.* ¶ 6(I).
[27] Fed. R. Civ. P. 34(a)(1).
[28] *Stewart v. First Transit, Inc.*, No. CV 18-3768, 2019 WL 13027112, at *1 (E.D. Pa. Sept. 3, 2019) (quoting *Tingle v. Hebert*, No. 15-626, 2018 WL 1726667, at *6 (M.D. La. Apr. 10, 2018)).

'contain confidential . . . private personal information that is wholly unrelated to the litigation.'"[29]

## III. DISCUSSION

### A. Confidentiality and Privilege

Opposing Doe's Motion, the District reverts to its initial objection that Doe's request "could also result in the disclosure of untold amounts of information protected by the Federal Educational Rights and Privacy Act."[30] "[I]t is well-established that FERPA does not create an evidentiary privilege."[31] Though FERPA may "embody the strong public policy of protecting student records,"[32] such evidence "is nonetheless discoverable unless Congress has taken steps to shield that information from discovery."[33] Accordingly, "[m]any courts have held that records protected by FERPA are not necessarily exempt from discovery in the context of civil litigation."[34] Further, records of student complaints of sexual harassment by an educator are not subject to

---

[29] *Id.* (quoting *John B. v. Goetz*, 531 F.3d 448, 460 (6th Cir. 2008)).
[30] Opp'n. Br., Doc. 42, at 11-12.
[31] *Hashem v. Hunterdon Cnty.*, No. CV158585FLWDEA, 2018 WL 2337145, at *2 (D.N.J. May 23, 2018)
[32] *Lei Ke v. Drexel Univ.*, No. CIV.A. 11-6708, 2014 WL 1100179, at *5 (E.D. Pa. Mar. 20, 2014).
[33] *See Jackson v. Clear Link Ins. Agency, LLC*, No. 4:22-CV-01466, 2023 WL 6436692, at *3 (M.D. Pa. Sept. 29, 2023) (citations omitted) (holding that Federal Rule of Evidence 408, despite being "animated by strong public policy concerns," did not preclude the production of settlement agreements absent an act of Congress to shield such information from discovery).
[34] *Hashem*, 2018 WL 2337145, at *2. (collecting cases).

6

FERPA.[35] Nor are records relating to employment matters, even when such matters include records of student complaints or statements.[36]

Based on the record before it, it is hardly obvious that the requested records would implicate information protected by FERPA. To the extent that it does, any concerns regarding privacy and confidentiality can be addressed by other means, such as a protective order.[37] To that end, insofar that it is necessary to balance the privacy interests of any student whose information may be implicated with Doe's need for the information,[38] production of the relevant documents is nevertheless warranted. The theoretical and limited invasion of any student's privacy interest is not a sufficient ground to deny Doe discovery of the records at issue. Nor is a generalized privilege objection. Similarly, Federal Rule of Evidence 502 provides the procedure by which the District can protect against waiver.[39]

The District does not contest the requested records are relevant, only that they do not exist. However, that responsive records have been produced by the Pennsylvania State Police confirms that such documents must have been in the District's possession at one point, if not today. And, to the extent such documents exist, they would fall

---

[35] *Id.* (citing *Briggs v. Bd. of Trustees Columbus State Cmty. Coll.*, No. 08–644, 2009 WL 2047899, at *5 (S.D. Ohio July 8, 2009); *Ellis v. Cleveland Municipal School District*, 309 F. Supp. 2d 1019 (N.D. Oh. 2004)).

[36] *Id.* (citing *Wallace v. Cranbrook Educ. Cmty.*, No. 05–73446, 2006 WL 2796135 (E.D. Mich. Sept. 27, 2006); *Cherry v. Clark Cty. Sch. Dist.*, No. 11–1783, 2012 WL 4361101, at *6 (D. Nev. Sept. 21, 2012)).

[37] *Jackson*, 2023 WL 6436692, at *3; *Ke*, 2014 WL 110179, at *6.

[38] *Cf. Ke*, 2014 WL 110179, at *6.

[39] *Doe v. Schuylkill Cnty. Courthouse*, No. 3:21-CV-477, 2023 WL 2763960, at *1-3 (M.D. Pa. Apr. 3, 2023).

squarely in the May 2009 to March 2012 period Gee attests that he was able to search. Further, Doe's arguments regarding the identified deficiencies in Gee's search, to which the District offers no meaningful response, are well taken. Even if the Court assumes that Gee is qualified to make the required relevancy determinations, it strains credulity that he performed a search that would take a trained professional six months in addition to his other duties as Technology Director and did not find a single relevant document.

Litigation is often characterized as a "search for truth." In civil litigation, the discovery process is at the heart of this quest. Though American courts rely on an adversarial system, discovery requires cooperation and candor between opposing parties. This is particularly true in the context of document productions. A litigant only knows that they received a full complement of relevant documents because their adversary says they did. Though courts can weigh in on objections as to relevancy or privilege, they too are largely limited to evaluating the sufficiency of the objections themselves; courts do not have the resources to conduct an independent, *in camera* review of every document to ensure fulsome productions are made.

It may well be the case that there simply are no responsive records to be produced, but Rule 34 does not require certainty that such records exist. Here, it is uncontroverted that such records did exist at some point in the past. Also, the District concedes that it still maintains *some* records for the relevant period, but that any relevant documents must have been among those which are unrecoverable through no fault of its own, an issue that was not disclosed after eighteen months and two requests by Doe

for Court intervention. Given the District's explanations for its dilatory, if not disobliging approach to discovery, its proffered justification for the lack of responsive records warrants more than "mere skepticism," and that such conduct has continued despite repeated Court intervention indicates that any relevant records are unlikely to be produced by "more conventional means."[40]

### B.     Preservation Obligations

The District's apparent failure to protect against the loss of relevant documents during the transition to a new email provider independently warrants granting Doe's Motion. The District's "duty to preserve potentially relevant evidence is an affirmative obligation that it may not shirk."[41] The duty "arises 'when the party in possession of the evidence knows that litigation by the party seeking the evidence is pending or probable and the party in possession of the evidence can foresee the harm or prejudice that would be caused to the party seeking the evidence if the evidence were to be discarded.'"[42] It is no defense that electronically stored documents were lost due to a "routine IT function" or that the District "'inadvertently failed to place a 'litigation hold' or 'off switch' on its document retention policy to stop the destruction of that evidence.'"[43] Further, Local Rule 26.1 requires counsel to "inquire into the computerized

---

[40] *Stewart*, 2019 WL 13027112, at *2 (quoting *John B.*, 531 F.3d at 460; *NOLA Spice Designs, LLC v. Haydel Enters., Inc.*, No. 12-2515, 2013 WL 3974535 (E.D. La. Aug. 2, 2013)).

[41] *Williams v. Pennsylvania State Univ.*, --- F. Supp. 3d ----, 2023 WL 6626789, at *5 (M.D. Pa. Oct. 11, 2023) (quoting *Mosaid Techs. Inc. v. Samsung Elecs. Co.*, 348 F. Supp. 2d 332, 339 (D.N.J. 2004)).

[42] *Hohider v. United Parcel Serv., Inc.*, 257 F.R.D. 80 (W.D. Pa. 2009) (quoting *Kounelis v. Sherrer*, 529 F. Supp. 2d 503, 518 (D.N.J.2008)).

[43] *Williams*, 2023 WL 6626789, at *5 (quoting *Mosaid*, 346 F. Supp. 2d at 339).

information-management systems used by their clients" and "inform their clients of the duty to preserve electronically stored information" prior to the Rule 16 conference between the parties.

In his Affidavit, Gee states that the 2016-2017 virus created the "gap" in the data from 2012 through part of 2021. He then attests that some of the remaining data was corrupted during the District's transition to a new email provider on December 17, 2022. Therefore, it appears that, following the virus and up to the transition to the new email provider, the District still possessed a full complement of records from the periods of May 5, 2009 through March 10, 2012 and August 3, 2021 through December 16, 2022. It follows then that, at a minimum, the records Doe obtained from PSP regarding the 2010 report were also in the District's possession until December 2022.

The District was served with Doe's Complaint on August 12, 2021.[44] Counsel for the District filed notices of appearance on September 16, 2021.[45] The parties filed their Joint Case Management Plan on August 9, 2022.[46] The absolute latest that the District was aware of the litigation, and thus obligated to take affirmative steps to preserve any potentially relevant evidence, was the summer of 2021. Rule 26.1 obligated counsel to discuss with the District its preservation obligation, as well as the maintenance of relevant records generally no later than August 2022.[47] Both predate the

---

[44] Aff. of Service, Doc. 4.
[45] Docs. 5-6.
[46] Doc. 19.
[47] The Court notes that the parties did not identify any issues regarding potentially deleted information in their Joint Case Management Plan, which further casts doubt on the District's claims that a virus led to widespread file loss. *See* LR 26.1(c)(3) (directing counsel to confer

District's transition to a new email provider in December 2022. Perhaps counsel discussed with the District its document preservation obligations, and the District put in place safeguards in an attempt to comply with the obligation, but those safeguards nonetheless failed. But, even if that is the case, it does not follow that the District's preservation obligations vanished with the records.[48]

Further, Loyalsock High School Counselor Diane Stanzione testified that her email "account was deleted when [she] retired" as part of the District's "normal practice."[49] It is not clear when Ms. Stanzione, or any other relevant individual, left the District. Insofar that any individual who may have possessed relevant information left after the District was aware of the possibility of this litigation, the District was obligated to preserve those records. Further, Rule 26.1 required counsel to inform Doe of any such records, even those which may have been deleted prior to the District becoming aware of this suit, so that the parties could discuss whether those records could be recovered.[50]

---

as to "whether deleted information still exists, the extent to which restoration of deleted information is needed, and who will bear the costs of restoration"); Case Management Plan, Doc. 19, ¶ 4.6 (certification by counsel that they conferred, and were into agreement as to the existence of any deleted information).

[48] See Young v. Pleasant Valley Sch. Dist., No. 3:07CV854, 2008 WL 11336157, at *6-8 (M.D. Pa. June 26, 2008) (discussing recovery and production of deleted emails); Cenveo Corp. v. Slater, No. CIV.A.06-CV-2632, 2007 WL 442387, at *3 (E.D. Pa. Jan. 31, 2007) (granting motion for forensic inspection and directing the forensic expert to recover deleted files).

[49] Reply Br., Doc. 46, at 2 (quoting Stanizone Dep. 40:10-18).

[50] LR. 26.1(c)(3). The Rule does not impose an obligation to restore deleted files. Rather, it requires the parties to confer on the issue so that, to the extent the restoration of deleted files is possible, it can be determined at an early stage whether restoration is appropriate. Of course, the District would have needed to inform Doe of the (non) existence of any relevant files before such a conversation could occur.

### C. Procedure for Forensic Inspection

Doe shall select a computer forensic expert trained in data recovery to produce a digital or mirror image of the places and files as identified in Doe's initial request served on the District on August 3, 2023.[51] The expert shall execute a confidentiality agreement agreed to by the parties and sign a copy of the protective order in place in this matter.[52] The relevant files to be searched are not to be limited to emails, and shall include any other notes, meeting minutes, memorandums, or other relevant files. The parties shall make every effort to facilitate the required imaging of any relevant storage media no later than **April 19, 2024**.

As Mr. Gee was the individual who performed the initial search, the District shall make all reasonable efforts to ensure that he is available, either as the representative as described in Doe's August 3 request, or in addition to that representative, for the inspection. After the inspection and imaging, the expert may perform the remainder of his or her responsibilities outside the District's premises. The examiner shall make every effort to complete this review by **May 10, 2024**. The non-privileged results of the forensic examination shall be provided to the District within three business days of receipt by Doe.[53]

---

[51] Doc. 40-1. The Court notes that the District's initial search appeared to be restricted to emails and did not include any other records. There does not appear to be any principled basis for the District limiting its search to emails; this was simply another deficiency of Gee's search. The Court emphasizes that Doe's forensic investigation need not be so limited to the extent that there are other digital or physical storage locations which may contain responsive materials.

[52] Doc. 24-2.

[53] For example, to the extent that the forensic inspection results in the identification of relevant, but previously unproduced documents, Doe shall inform the District accordingly. It is the

The inspection shall, to the extent possible, provide for the segregation of documents which may implicate attorney-client or work product privileges, by keywords or otherwise. To the extent that the inspection identifies any potentially relevant, privileged documents, the District shall conduct a privilege review and provide to Doe a privilege log by **May 24, 2024**. A failure to do so will likely result in a waiver of the privilege. Any segregated documents which are relevant and not privileged shall be produced simultaneously with the privilege log.

Mr. Gee, or another representative with sufficient knowledge of the information in Mr. Gee's Affidavit, shall provide to Doe, no later than **April 12, 2024**, a response to the issues raised by Mr. Wolfinger in paragraph 6 of his Affidavit. In particular, the response shall detail (1) the method of the search; (2) the types of files searched; (3) the physical hardware searched; (4) the 2016-2017 virus and accompanying loss of data; (5) the 2022 transition to a new email vendor and the accompanying loss of data; (6) when the search was conducted and how long it took. The response shall also detail (1) the "additional key words" used to conduct the search as described in paragraph 7 of Gee's Affidavit; (2) the District's document preservation protocol implemented in accordance with its obligations to preserve documents relevant to this litigation; and (3) the District's practice of deleting the files of outgoing personnel, as well as identify any relevant individuals whose files may have been deleted accordingly, including but not

---

Court's intention that prompt disclosure of such information shall provide the District with the opportunity to raise any privilege objections under Rule 502. Any privileged report, findings, or communications with, by, or about the forensic examiner are not subject to disclosure.

13

limited to the individuals identified in Section D.2. of Doe's Rule 34 request, and the dates that such files were deleted.

It is the Court's hope that requiring the District to address these issues will facilitate an efficient forensic inspection, as well as help resolve any potential loose ends so that discovery may finally, pray God, come to a close. Any records related to the above, *i.e.*, documentation regarding document preservation or retention policies, shall be produced by **April 30, 2024** as appropriate.

In its Order granting Doe's Motion, the Court will, as a precaution, clarify that the Confidentiality Agreement[54] applies to information protected by FERPA.[55] Further, the Court's Order will also provide, pursuant to Rule 502, that the District may "claw back" any privileged information that is disclosed as a result of the forensic examination. The District shall notify Doe of the disclosure of any privileged information within two weeks of receiving the results of the forensic inspection from Doe. If Doe wishes to contest any claim of privilege, she shall notify the District within one week. The parties then shall confer and attempt to resolve the dispute within the following week prior to seeking Court intervention.

The District may also retain its own expert to conduct a review in parallel to Doe's expert. Any such review shall also follow the procedure described above.

---

[54] Doc. 20-2.
[55] At first glance, it appears that information covered by FERPA would fall within the broad definition of confidential information contained within the parties' Confidentiality Agreement.

Notwithstanding the foregoing, it is not the Court's intention or desire to micromanage discovery for the parties. So, while the Court has set out guidelines for conducting the forensic inspection and addressing any attendant issues, the parties may, and are in fact encouraged to confer and agree to alternate procedures, scheduling, or arrangements as is appropriate. The parties need not seek permission from or intervention by the Court to deviate from the guidelines set out in this section, other than to promptly notify the Court in the event it is impossible to complete the forensic inspection and subsequent review of any documents by **May 31, 2024,** or to otherwise allow sufficient time to prepare and file dispositive motions by **June 28, 2024**.[56]

The parties are advised that the Court will not grant any extensions absent good cause.[57] On that front, currently pending before the Court is the District's unopposed Motion for Extension of Discovery Deadlines.[58] That Motion followed a status conference between the Court and the parties regarding the need to extend the discovery deadline to April 30, 2024 to complete outstanding depositions.[59] While the Court will extend the discovery deadline to enable the forensic inspection of the District's ESI, the parties are nevertheless expected to complete the depositions by the April 30 deadline.

---

[56] On the other hand, to the extent that the parties cannot agree to a deviation from the foregoing, the Court respectfully encourages them to make every effort to adhere to the procedure described above prior to seeking Court intervention. It should go without saying that requests for Court intervention are largely antithetical to the efficient resolution of discovery disputes.

[57] The District is cautioned that the Court is likely to view any requests from it in particular with skepticism. If the inspection and review require additional time, it will likely be the result of the recovery of documents that the District has long maintained did not exist.

[58] Doc. 49.

[59] The Court notes that the proposed order filed with the Motion requests that the deadline be extended to April 14, 2024. Doc. 49-1. The Court assumes that this is a typographical error.

15

### D. Sanctions

Doe also requests that the Court impose sanctions on the District under Federal Rule of Civil Procedure 37.[60] Broadly, Rule 37 provides that the Court can impose sanctions for failures to properly respond to discovery requests, comply with Court orders, supplement discovery responses as appropriate, or preserve electronically stored information. The sanctions available range from attorney's fees and adverse inference instructions to dismissal or default judgment.

Though the Court dreams of a world in which litigants amicably resolve all discovery disagreements, disputes over the proper bounds of discovery are a fact of litigation. The Court stands ready and willing to mediate such legitimate disputes. In doing so, the Court aims to, where possible, work with the parties to find a mutually agreeable path forward, to avoid needlessly wasting the Court's and the parties' resources on unnecessary motion practice. Where such an agreement is reached, the parties are expected to proceed accordingly. Otherwise, there would be no reason to involve the Court. In any case, the Court could certainly consider a party's conduct, even if not violative of a docketed Order, when weighing sanctions.[61]

Nevertheless, the Court finds that Doe's request for sanctions is premature. Until the forensic inspection is complete, it remains an open question whether, and if so the

---

[60] Supp. 14-15.
[61] *See Ware v. Rodale Press, Inc.*, 322 F.3d 218, 221 (3d Cir. 2003) (citing *Poulis v. State Farm Fire and Cas. Co.,* 747 F.2d 863, 868 (3d Cir.1984)) (discussing factors to be considered for certain sanctions under Rule 37, including the conduct of the party or the attorney). *Cf.* Opp'n. 12-13; Reply 10 (argument of the parties regarding the effect of the Court's directives given at a status conference).

extent to which the District has failed to fulfill its discovery obligations. Given that discovery will come to a close with the resolution of this dispute, thus minimizing any deterrent effect of sanctions in this case, the Court finds that it would be more prudent to defer a decision on the issue.

## IV.  CONCLUSION

For the foregoing reasons, Plaintiff Jane Doe's Motion to Compel is granted.

An appropriate Order follows.

BY THE COURT:

*s/ Matthew W. Brann*
Matthew W. Brann
Chief United States District Judge