# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JANE DOE, | | No. 4:21-CV-01343 |
| Plaintiff, | | (Chief Judge Brann) |
| v. | | |
| LOYALSOCK TOWNSHIP SCHOOL DISTRICT, | | |
| Defendant. | | |

## MEMORANDUM OPINION

### APRIL 28, 2026

In advance of a trial beginning on June 1, 2026, the two parties have filed a total of seven motions in limine.[1] Four have been filed by the Plaintiff, Jane Doe,[2] and three have been filed by the Defendant, Loyalsock Township School District ("the District").[3] Each has been fully briefed and is now ripe for disposition.

All seven will be addressed in this opinion, with the Court beginning by analyzing two of the motions, one filed by each party, that address identical subject matter—prior allegations of misconduct against a non-party victim. Then the Court will address the three remaining motions filed by the Plaintiff, before finishing by reviewing the District's other two motions.

---

[1] *See* Docs. 96, 98, 100-02, 106, & 108.
[2] *See* Docs. 100, 101, 106, & 108.
[3] *See* Docs. 96, 98, & 102.

## I.    PRIOR ALLEGATIONS AGAINST NON-PARTY PERPETRATOR

Plaintiff has filed a motion requesting that the Court allow "the introduction of evidence concerning prior complaints and reports of misconduct made against Defendant Loyalsock Township School District's ("District") employee, Kelli Vassallo ("Vassallo"), before the abuse of Plaintiff occurred."[4] Additionally, one of the District's motions in limine directly addresses this issue in a more specific fashion. In that motion, the District asks the Court to "preclude[e] any evidence, reference, argument or statement of Vas[s]allo's prior acts of criminality as imputed to the Defendant District's actual knowledge of a Title IX violation and refusal to remedy the same."[5]

The District argues in its own motion — and its brief in opposition to Plaintiff's motion — that Plaintiff "intends to show, through non-propensity evidence, that Vasallo's 2010 'prior act' infers that the District 'knew' the same truth about the act as Vasallo – that a crime was committed."[6] This shows that despite a surface Federal Rule of Evidence 404 argument, the heart of their argument is that this evidence would be overly prejudicial and violate Rule 403.[7] I will not belabor the Rule 404 argument, as it is seemingly conceded by the Defendant.[8] Rather, I will

---

[4]    Doc. 104, at 1.
[5]    Doc. 99, at 5.
[6]    Doc. 115, at 3-4; *see also* Doc. 99, at 3.
[7]    When this opinion refers to a Rule, it is referring to one contained in the Federal Rules of Evidence.
[8]    After all, it claims that such evidence is not propensity evidence. *See* Doc. 99, at 3; Doc. 115, at 3.

simply say that the Court agrees that Plaintiff is offering this evidence for a non-propensity purpose—to show knowledge.[9] Therefore, admission of this evidence would not violate Rule 404(b).

The United States Court of Appeals for the Third Circuit has explicitly stated that "*pretrial* Rule 403 exclusions should rarely be granted."[10] "Excluding evidence as being more prejudicial than probative at the pretrial stage is an extreme measure that is rarely necessary, because no harm is done by admitting it at that stage."[11] The Court agrees with this logic. This is not a case where the Court has before it "a record complete enough on the point at issue to be considered a virtual surrogate for a trial record."[12] That is the sole requirement "to exclude evidence under Rule 403 at the pretrial stage," and it is clear that it is not met in this case. As a result, an objection to this evidence under Rule 403 is premature. However, the Plaintiffs may raise this objection when such evidence is raised at trial.

As a final note on the arguments in these motions, the District repeatedly makes assertions that despite their knowledge of allegations regarding Vassallo, a police investigation into them yielded no charges.[13] Evidence showing this and other evidence that could rebut an argument of actual knowledge can and should be set

---

[9]   *See United States v. Repak*, 852 F.3d 230, 242 (3d Cir. 2017) ("The plain text of Rule 404(b) allows for the admission of other-acts evidence to show knowledge") (citing Fed. R. Evid. 404(b)).

[10]   *In re Paoli R.R. Yard PCB Litig.*, 916 F.2d 829, 859 (3d Cir. 1990).

[11]   *Id.*

[12]   *Id.*

[13]   *See* Doc. 115, at 4-5; Doc. 121, at 2.

forth during this trial. However, the District offers no justification to wholly preclude evidence that there was actual knowledge. [14]

Therefore, Plaintiff's motion to allow for the introduction of evidence that the District had notice of prior allegations against Vassallo is granted. Additionally, the District's motion to preclude such evidence is denied without prejudice.[15]

## II. PLAINTIFF'S JOINT MOTIONS IN LIMINE

Ms. Doe has filed three additional motions in limine. The first requests a limitation of the testimony of the Defendant's only proposed expert.[16] The second seeks to use multimedia and various types of evidence in the Plaintiff's opening statement.[17] The third relates to the District referring to the juror's responsibility as taxpayers and implying that they would be responsible for paying any damages award in this case.[18] I will now address the merits of each of these motions.

### A.    Limitation of Dr. Elliot Atkins' Testimony

The final motion in limine filed in this case was submitted by Plaintiff on March 2, 2026 and addresses the testimony of the District's one and only potential

---

[14]  The Court also disagrees with the District's statement that this evidence "is not probative of actual knowledge and, therefore, is not relevant to an analysis or finding of deliberate indifference." Doc. 121, at 2. The District has provided no cases, or arguments, supporting this proposition. As a result, the Court is unconvinced by the bare assertion.

[15]  The District may re-raise this objection during the trial if it believes that it has a basis to preclude this evidence.

[16]  Doc. 108. The Court recognizes that this was the motion in limine that was filed last in time. These motions will not be addressed in the order in which that they were filed. Rather, they are reorganized to allow for better use by the parties.

[17]  Doc. 100.

[18]  Doc. 106.

expert witness.[19] This motion requests that the Court preclude "Elliot L. Atkins, Ed.D, from offering evidence or testimony regarding 'Litigation-Induced Trauma' and malingering."[20] The Report of Dr. Aitkins purports to conduct "a forensic evaluation of Jane Doe in an effort to assess the extent to which she may have suffered psychological injury as the result of the alleged sexual abuse by her basketball coach, Kelly Vasallo [sic], while a teenager in 2013-2014."[21]

Despite Plaintiff's attempt to frame this as a motion in limine, it is best described as *Daubert* motion. Such motions are challenges under Rule 702,[22] and almost the entirety of the motion is based on a Rule 702 challenge.[23] Therefore, the Court will analyze the merits of this motion as a *Daubert* motion.

As an initial matter, the aspects of this opinion that challenge Dr. Atkins report are untimely. On August 16, 2022, the Court issued a Case Management Order in this case that explicitly stated that "[m]otions to exclude expert testimony shall be filed no later than thirty days from receipt of the expert's report."[24] While several motions to extend the discovery and dispositive motions deadline were granted in the time that has followed this August Order, none of them changed the requirement that challenges to expert reports must be filed within thirty days of the receipt of the

---

[19]   Doc. 108.
[20]   *Id.*
[21]   Doc. 110, Ex. 1 (Dr. Atkins Report), at 2.
[22]   *See In re Front Loading Washing Mach. Class Action Litig.*, No. CIV.A. 08-51 FSH, 2013 WL 3466821, at *1 (D.N.J. July 10, 2013).
[23]   *See generally* Doc. 110.
[24]   Doc. 21 ¶ 13.

expert report.[25] The expert report of Dr. Atkins was produced on December 12, 2025,[26] while the motion attempting to limit Dr. Atkins was not filed until March 2, 2026.[27] This means that the motion to exclude portions of the expert's testimony was filed seventy-seven days after the expert's report was produced—far more than the thirty day allowance under this Court's Order.[28]

Deadlines set by the Court — including those for the filing of challenges to expert testimony— serve an important purpose; they are not made on a whim to fill space in orders. Under the Federal Rules of Civil Procedure, a district court may establish deadlines for parties to file motions, including Daubert motions and motions in limine.[29] Further, this Court has discretion to enforce its own orders.[30] Federal Rule of Civil Procedure 16 states that scheduling orders should only be modified for good cause.[31] In the briefing on this motion, the issue of untimeliness was not addressed by Plaintiff, nor was any justification for the tardiness provided. This patently does not establish that there is good cause to modify the August 2022 Scheduling Order.[32] The issue was also not raised by the District in its subsequent

---

[25]  *See, e.g.*, Docs. 19, 56.
[26]  Doc. 110, at 1.
[27]  Doc. 108.
[28]  *See* Doc. 21 ¶ 13.
[29]  Fed. R. Civ. P. 16(b).
[30]  *See id.*; *Taylor v. Shields*, 744 Fed. Appx. 83, 87 (3d Cir. 2018).
[31]  Fed. R. Civ. P. 16(b).
[32]  *See Sikkelee v. Precision Airmotive Corp.*, 522 F. Supp. 3d 120, 153 (M.D. Pa. 2021).

briefing. Nevertheless, this disobedience provides sufficient justification to deny this motion.[33]

But it is important to note that there is a countervailing interest present, aside from the disrespect of the Court's orders.[34] Under Federal Rule of Evidence 702 "a trial judge acts as a gatekeeper to ensure that any and all expert testimony or evidence is not only relevant, but also reliable."[35] As gatekeeper, a trial judge has three duties: (1) "confirm the witness is a qualified expert"; (2) "check [that] the proposed testimony is reliable and relates to matters requiring scientific, technical, or specialized knowledge"; and (3) "ensure the expert's testimony is 'sufficiently tied to the facts of the case,' so that it 'fits' the dispute and will assist the trier of fact."[36] "The text of Rule 702 contains no exception to these requirements, so if they are not satisfied, an expert cannot testify before the 'trier of fact.'"[37]

With these countervailing interests in mind, "I find that it would be inappropriate to wholly abdicate my role as gatekeeper and allow the jury to hear potentially unfounded expert opinions on the basis that counsel failed to comply with

---

[33] *Pharmacy Corp. of Am. v. Askari*, No. 21-2800, 2022 WL 3697342, at *5 (3d Cir. Aug. 26, 2022) ("The court set a deadline for *Daubert* motions, but he missed it. So if it was a *Daubert* motion, the District Court reasonably denied it as too late.").

[34] *See Sikkelee*, 522 F. Supp. 3d at 153.

[35] *UGI Sunbury LLC v. A Permanent Easement for 1.7575 Acres*, 949 F.3d 825, 832 (3d Cir. 2020) (internal quotation marks omitted).

[36] *Id.* (quoting *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 591 (1993)).

[37] *Id.* (citing Fed. R. Evid. 702).

the scheduling Order."[38] As a result, I have thoroughly considered the merits of this *Daubert* motion and will briefly analyze the issues within it.

Plaintiff does not attempt to challenge the qualifications of Dr. Atkins, she only brings arguments related to the reliability and fit of his testimony.[39] If neither proves to be a sufficient justification for limiting Dr. Atkins' testimony, then this motion must be denied.[40] I will now address each in turn.

### 1. Reliability

The Third Circuit has "concluded that 'an expert's testimony is admissible so long as the process or technique the expert used in formulating the opinion is reliable.'"[41] Reliable expert testimony must be "based on the methods and procedures of science, not on subjective belief and unsupported speculation" or "mere haphazard, intuitive inquiry."[42] But it need not have the "best foundation" or

---

[38] *Sikkelee*, 522 F. Supp. 3d at 153. *Compare Daddio v. A.I. DuPont Hosp. for Children of Nemours Found.*, 650 F.Supp.2d 387, 402 (E.D. Pa. 2009) (considering an untimely Daubert motion on the merits) *with Nw. Sav. Bank & Fin. Servs. v. NS First St. LLC*, 2011 WL 6180874 at *5 (M.D. Pa. Dec. 13, 2011) (refusing to consider a Daubert motion filed more than a month after the relevant deadline). The Court in *Northwest Savings Bank* noted that the motion at issue was filed just nine days before trial was set to begin. Here, although the motion was filed more than two months after the deadline, it was also filed more than three months before the start of trial. That provides enough time "so that the expert's proposed testimony can be evaluated with care." *Feliciano–Hill v. Principi*, 439 F.3d 18, 24 (1st Cir. 2006).

[39] Doc. 110, at 2.

[40] As an initial note, the Court finds no merit to any argument that the subject matter of Dr. Atkins' report is inherently unreliable or unhelpful to the trier of fact.

[41] *Kannankeril v. Terminix Int'l*, 128 F.3d 802, 806 (3d Cir. 1997) (quoting *In re Paoli R.R. Yard PCB Litig.*, 35 F.3d 717, 742 (3d Cir. 1994)).

[42] *UGI Sunbury LLC v. A Permanent Easement for 1.7575 Acres*, 949 F.3d 825, 833-34 (3d Cir. 2020) (internal quotation marks omitted).

be "supported by the best methodology or unassailable research."[43] It need only be based on "good grounds."[44] To test the basis for the opinion, courts should consider the following list of factors, none of which are dispositive:

> (1) whether a method consists of a testable hypothesis; (2) whether the method has been subject to peer review; (3) the known or potential rate of error; (4) the existence and maintenance of standards controlling the technique's operation; (5) whether the method is generally accepted; (6) the relationship of the technique to methods which have been established to be reliable; (7) the qualifications of the expert witness testifying based on the methodology; and (8) the non-judicial uses to which the method has been put.[45]

Further, "[t]he admissibility inquiry … focuses on principles and methodology, not on the conclusions generated by the principles and methodology."[46] "Once admissibility has been determined, then it is for the trier of fact to determine the credibility of the expert witness."[47] "Nonetheless, 'conclusions and methodology are not entirely distinct from one another.'"[48] "The court 'must examine the expert's conclusions in order to determine whether they could reliably flow from the facts known to the expert and the methodology used.'"[49]

---

[43]  *Id.* (internal quotation marks omitted).
[44]  *Id.*
[45]  *Id.* (internal quotation marks omitted).
[46]  *In re TMI Litig.*, 193 F.3d 613, 665 (3d Cir. 1999) (citing *Kannankeril*, 128 F.3d at 806).
[47]  *Id.*
[48]  *Id.* (quoting *General Electric Co. v. Joiner*, 522 U.S. 136 (1997)).
[49]  *Id.* (quoting *Heller v. Shaw Industries, Inc.*, 167 F.3d 146, 153 (3d Cir. 1999)).

Plaintiff attacks Dr. Atkins reliability first based on his use of the "Structured Interview of Malingered Symptoms (SIMS)" tool.[50] She alleges that "Dr. Atkins fails to address whether the SIMS is a generally accepted method of evaluating malingering in the context of psychological impact of chronic childhood sexual abuse, and he fails to describe the scientific methodology for administering this scale in the context of his broader evaluation of Plaintiff."[51] But Plaintiff ignores that "[e]xperts are not required to use "magic words" when expressing their opinions; the substance of their testimony controls."[52] The substance of the testimony here shows that it is based on more than a sufficient ground to qualify as the "good grounds" needed to pass the reliability bar.[53]

The remaining objections to Dr. Arkins credibility appear to address the "weight rather than admissibility because, at bottom, they constitute disagreements with Dr. [Atkins'] methodology, facts that it believes Dr. [Atkins] should have considered, and alternative methods it would have preferred."[54] For example, Plaintiff points to facts—or the absence thereof—that Dr. Atkins does not mention in his report.[55] But "an expert's failure to consider every available fact or option

---

[50]    Doc. 110, at 5.
[51]    *Id.*
[52]    *Braun v. Liu*, No. 1:20-CV-01848, 2023 WL 11959812, at *5 (M.D. Pa. July 17, 2023).
[53]    *UGI Sunbury LLC v. A Permanent Easement for 1.7575 Acres*, 949 F.3d 825, 833-34 (3d Cir. 2020). The Court notes specifically that the "Phycological Testing" section of the report provides a detailed explanation of the methods utilized by Dr. Atkins. *See* Doc. 110, Ex., at 9-13. This appears sufficient to satisfy the reliability requirements.
[54]    *Sikkelee v. Precision Airmotive Corp.*, 522 F. Supp. 3d 120, 156 (M.D. Pa. 2021).
[55]    *See* Doc 110, at 6.

"neither renders his methodology unreliable nor his report inadmissible but, rather, goes to the weight of his testimony."[56] While these proffers provide several compelling reasons why Dr. Atkins' conclusions may not be correct, "cross-examination provides the proper arena to demonstrate any shortcomings. It seems clear that defense counsel will be able to adequately address its concerns at that time."[57]

Overall, I take note of Ms. Doe's arguments, but they are best addressed during the examination of Dr. Atkins.[58] They do not offer a reason to disqualify him as an expert or limit his testimony.[59]

### 2.    Fit

Whether the opinion "fits" depends on whether it will "assist the trier of fact to understand the evidence or to determine a fact in issue."[60] "'Fit' is not always obvious, and scientific validity for one purpose is not necessarily scientific validity

---

[56]    *Voilas v. Gen. Motors Corp.*, 73 F.Supp.2d 452, 462 (D. N.J. 1999).

[57]    *Sikkelee*, 522 F. Supp. 3d at 156. The notion that Dr. Atkins' conclusion is undermined by it being a suggestion can be raised in cross-examination. But the fact that an expert qualifies their conclusion does not undermine their reliability. *See Lillis v. Lehigh Valley Hosp. Inc.*, No. CIV. 97-3459, 1999 WL 718231, at *7 (E.D. Pa. Sept. 3, 1999) ("That an expert may, at some point during his testimony, qualify his opinion does not render his opinion inadmissibly speculative"), *aff'd*, 251 F.3d 154 (3d Cir. 2000).

[58]    *Id.*

[59]    Plaintiff has noted that she would like the opportunity to provide a rebuttal report from their own expert. *See* Doc. 110, at 1-2 n.2. The Court sees no reason to preclude the additional filing of this report, assuming it is timely produced to the District. Additionally, the District will be provided with an opportunity to object to this report and allow for Dr. Atkins to address the rebuttal — assuming he is qualified to do so.

[60]    *In re TMI Litig.*, 193 F.3d 613, 663 (3d Cir. 1999).

for other, unrelated purposes."[61] "Thus, even if an expert's proposed testimony constitutes scientific knowledge, his or her testimony will be excluded if it is not scientific knowledge for purposes of the case."[62]

Plaintiff argues that the suggestion by Dr. Atkins that Ms. Doe's damages are diminished by litigation-based trauma does not assist the trier of fact.[63] She also points out that he has not, and cannot, opine the amount Plaintiff's damages should be diminished for this reason.[64] I will not take a significant amount of time to address this issue because this expert testimony appears to be helpful to the trier of fact. The standard to determine whether the fit requirement is met is interpreted broadly.[65] Here, the emotional harm that all agree that Plaintiff has suffered is directly at issue. Expert testimony would assuredly assist the trier of fact in determining the root causes of this damage and what role different factors and actors played in bringing it about. Additionally, Plaintiff's assertion that Dr. Atkins' inability to put a dollar amount on various parts of his opinion is inconsequential.[66]

As an additional note on this point, the Court wishes to address Plaintiff's assertion that Dr. Atkins' testimony suggests "that Plaintiff's distress stems from her

---

[61]   *Id.* at 670 (quoting *Daubert*, 509 U.S. at 591).
[62]   *In re Paoli R.R. Yard PCB Litig.*, 35 F.3d 717, 743 (3d Cir. 1994).
[63]   Doc. 110, at 7-8.
[64]   *Id.* at 8.
[65]   *See Am. Tech. Res. v. United States*, 893 F.2d 651, 655 (3d Cir. 1990).
[66]   *Benton v. Sims*, No. CV 19-16157, 2022 WL 2952915, at *10 (D.N.J. July 26, 2022) ("[a]n expert's proposed testimony should not be excluded merely because it fails to account for some particular condition or fact which the adversary considers relevant.") (internal quotation marks omitted).

pursuit of justice."[67] This is a patent misrepresentation of Dr. Atkins' report.[68] His report does not conclude or even impliedly make the assertion that Ms. Doe's distress has been solely caused by this litigation.[69] Rather, it addresses a multitude of factors that he believes have led to the mental health issues that have plagued her. One of the factors mentioned is explicitly the interactions with Vassallo.[70] If this report, expert, or any expert report or witness attempted to conclude that there was no harm caused by the abhorrent interactions between Ms. Doe and Vassallo, then there would be a plethora of reliability, fit, and undue prejudice concerns. If such statements are made, Plaintiffs can and should object, and those objections would appear to have a more than sufficient basis to be sustained. However, this expert's report says nothing of the kind; it only attempts to assert that there may be multiple causes of Plaintiff's mental anguish.[71] If there are other potential causes of the harm she has suffered, it is directly relevant to the damages and causation issues in this case and testimony on it would certainly assist the trier of fact.[72]

Overall, it appears that Dr. Atkins' testimony would assist the trier of fact in deciding this case, and, as a result, there is no fit problem with his testimony.

---

[67]    Doc. 110, at 8.
[68]    *See* D Doc. 110, Ex. 1, at 15-16.
[69]    *See id.*
[70]    *Id.* at 16
[71]    *See id.*
[72]    *See, e.g.*, *Hanna v. Giant Eagle Inc.*, No. 2:15CV1009, 2018 WL 11474894, at *1 (W.D. Pa. Mar. 28, 2018).

### 3.    Disposition of the Motion

For the foregoing reasons, Plaintiff's motion to limit the testimony of Dr. Atkins is denied without prejudice. However, I want to be explicit in explaining exactly what the disposition of this motion means. Dr. Atkins has not been qualified as an expert in this case. While the explanations in this opinion may indicate how the Court could rule on a motion to proffer Dr. Atkins as an expert, no such motion has been made. In fact, despite there being an indication that seven total expert witnesses may be called at this trial, no witnesses have been offered or entered as an expert in this case.[73] It is for the District to establish the requirements for Dr. Atkins to be entered as an expert and then offer him as such. Plaintiff has the same responsibility to do both for her six potential experts.

However, based on my review of Dr. Atkins' report and the briefing on this motion, the Court is holding that it does not have sufficient grounds to limit his testimony at this stage. But if—or more aptly, when—the District proffers Dr. Atkins as an expert, Ms. Doe will have the opportunity to object on any reasonable basis to Mr. Atkins as an expert — including re-raising portions of this motion that she believes remain relevant.[74]

---

[73]  *See* Doc. 127, at 6, at; Doc. 131, at 13.

[74]  The same opportunity will be provided to the District when Plaintiff proffers her experts. Because of the time this is expected to take, and in the interest of expeditiously trying this case, the parties are strongly urged by the Court to discuss the admission of witnesses as experts in advance of trial. If there is the possibility of a stipulation to witnesses being admitted as experts, it would be in everyone's interest to pursue it.

## B.    Use of Multimedia in Opening Statement

Plaintiff's next motion in limine requests that the Court allow her to use "multimedia aids in her opening statement, including, but not limited to the timeline of events, limited portions of video depositions designated for trial, images, and excerpts of admissible documents."[75] As the District has correctly pointed out, the specific depositions, images, and documents Plaintiff seeks to use in her opening statement, or even the timeline sought to be used, have not been disclosed to the Court or opposing counsel.[76]

An "opening statement is not evidence in itself, but serves 'to give the jury the broad outlines of the case to enable the jury to comprehend it.'"[77] Demonstrative aids can be used during these opening statements at the Court's discretion.[78] However, these "aids should be based upon materials in evidence.  Thus[,] they should not ordinarily be used until opposing counsel has examined them and been afforded an opportunity to call to the court's attention any inconsistencies between

---

75  Doc. 105, at 1. The Court notes that there are scarce references in the brief in support to a challenge under Rule 403. *See* Doc. 110, at 8. However, these references are directly intertwined with *Daubert* challenges, and it is clear such Rule 403 challenges are utilized as a vehicle to get the Court to address these *Daubert* arguments. Regardless, the Court will deny the Rule 403 challenges to this evidence for these same reasons as the previous motions; "[e]xcluding evidence as being more prejudicial than probative at the pretrial stage is an extreme measure that is rarely necessary, because no harm is done by admitting it at that stage." *In re Paoli R.R. Yard PCB Litig.*, 916 F.2d 829, 859 (3d Cir. 1990).

76  *See generally* Doc. 118.

77  *United States v. De Peri*, 778 F.2d 963, 978 (3d Cir. 1985) (quoting *Government of the Virgin Islands v. Turner,* 409 F.2d 102, 103 (3d Cir.1969)).

78  *Alicea v. United States*, 100 F. Supp. 3d 457, 479 (E.D. Pa. 2015) (citing *De Peri*, 778 F.2d at 789).

the contents of a visual aid and the evidence which has been admitted."[79] The Court further believes that it is prudent to treat all evidence proposed to be shown to the jury in a similar fashion.

The motion set forth by the Plaintiffs is extremely vague and is almost entirely made up of legal conclusions. None of the evidence sought to be included in the opening statement — and, as a result, shown to the jury — has been disclosed outside of opaque statements alluding to what these documents might be. While "no rule requires Plaintiff's counsel to reveal to Defendants [her] opening statement,"[80] showing the jury these documents during opening statements presents a vastly different issue. It appears that Plaintiffs "in essence [seek] an advance evidentiary ruling by the Court on the admissibility of these substantive evidentiary exhibits."[81] Such a ruling would assuredly allow for these images and documents to be shown to the jury. The Court will not take the bait when it has not seen the exhibits.

Rather, the Court will deny this motion as premature. Instead, I will order multimedia and documents sought to be used in either party's opening to be produced to the opposing counsel fourteen days prior to the start of trial.[82] If the opposing party objects to the usage of any of the evidence, its objections will be due

---

[79] *Bower v. O'Hara*, 759 F.2d 1117, 1127 (3d Cir. 1985).

[80] *Hunter v. Kennedy*, No. 17-CV-00007, 2020 WL 3980435 (M.D. Pa. July 14, 2020).

[81] *Brown v. Kia Motors Corp.*, No. 06-CV-0804, 2010 WL 135125 (W.D. Pa. Jan. 9, 2010).

[82] *See Good v. FirstEnergy Corp.*, No. 3:13CV149, 2016 WL 492804, at *5 (M.D. Pa. Feb. 9, 2016). However, it is important to note that while the documents and visual aids sought to be used must be produced, the way they will be used and the contents of the opening statement, generally, needed not and should not be disclosed to the opposing party.

seven days prior to the start of trial.[83] This will allow the Court to focus on the content of the objections and review the evidence prior to making a determination on what can and cannot be used during the opening statements.

### C.    Taxpayer Impact Arguments or References

Ms. Doe's final motion in limine invites the Court to preclude the District from making "any statement or inference that: (1) a verdict against Defendant will cost taxpayers money; (2) an award will burden the public treasury or government resources; (3) jurors, as taxpayers, will personally bear the cost of any judgment; and/or (4) the size of any award should be tempered because of its ultimate source in public funds, or similar reference."[84] She alleges that such assertions would be irrelevant under Rule 401, unduly prejudicial under Rule 403, and would be an improper appeal to a jury's interest as a taxpayer.[85]

As an initial matter, it is important to note what is actually requested in this motion in limine. It appears to the Court that Plaintiff is not seeking to bar the introduction of evidence that the District is a governmental entity. Such evidence is clearly relevant and admissible.[86] What Plaintiff does seek to prohibit are statements

---

[83]    *See id.*
[84]    Doc. 107, at 1-2.
[85]    *See id.* at 4-7.
[86]    *See Coffman v. Greater Latrobe Sch. Dist.*, No. 25-462, 2026 WL 607518, at *2 (W.D. Pa. Mar. 4, 2026) "a plaintiff must prove five elements to recover under Title IX …: (1) that the defendant is a Title IX funding recipient . . . .") (citing *Gebser v. Lago Vista Ind. Sch. Dist.*, 524 U.S. 274 (1998)). While the Court does not take it to be seeking this, such a motion would be denied on a relevance or Rule 403 basis.

by the District that a damages award will be born by the public and the jurors themselves as taxpayers.

Plaintiff's argument that an appeal to a juror's pecuniary interest as a taxpayer is improper is sufficient reason to bar such statements. As a general matter, "[a]ppealing to the sympathy of jurors through references to financial disparity is improper."[87] Further, "appeals to class prejudice are highly improper and cannot be condoned and trial courts should ever be alert to prevent them."[88] While the Third Circuit has not explicitly stated that such references to a juror's responsibility as a taxpayer are improper, other circuits and district courts in this circuit have found it to be objectionable.[89] The Court agrees that such references to jurors as taxpayers would be overly prejudicial and improper.[90]

---

[87]  *Draper v. Airco, Inc.*, 580 F.2d 91, 95 (3d Cir. 1978).

[88]  *United States v. Socony-Vacuum Oil Co.*, 310 U.S. 150, 239 (1940).

[89]  *See, e.g.*, *United States v. Palma,* 473 F.3d 899, 902 (8th Cir.2007) ("Remarks invoking the individual pecuniary interest of jurors as taxpayers are universally viewed as improper."); *United States v. Smyth,* 556 F.2d 1179, 1185 (5th Cir.1977) (characterizing the statement "that's your tax money being kicked in here" as a "highly improper appeal to the passion and prejudices of the juror"); *United States v. Beam*, No. 1:10-CR-047, 2010 WL 4623934, at *1 (M.D. Pa. Nov. 5, 2010).

[90]  Other than pointing out that the funding of the District is relevant to the Title IX claim, there does not appear to be a coherent legal argument set forth by the Defendant on this motion. *See generally* Doc. 116. The District states in poetic fashion that "[t]his community is the true defendant in this case and the community's persona [sic] and financial contributions that come from their hard-earned wages should not be cloaked in darkness during this trial." Doc. 116, at 3. This sentiment highlights the potential prejudice that could arise if similar statements are made during this trial; it shifts the focus of the trial to the jurors and their and their community's willingness to pay any potential damages. Such prejudice will not be risked when it is obvious from the Defendant's briefing that it is likely to make similar statements before the jury.

The District's claim that fear is not a basis to exclude evidence is true on a surface level, but if you examine what that fear is in this context, it becomes apparent the fear of bias is simply a fear of undue prejudice. This, of course, can be a basis to exclude relevant evidence under Rule 403. The Court believes that the statements and inferences that are sought to be precluded here would simply be unduly prejudicial and should be barred under Rule 403.

Therefore, this motion in limine is granted and all parties will be precluded from making a statement or inference that: (1) a verdict against Defendant will cost taxpayers money; (2) an award will burden the public treasury or government resources; (3) jurors, as taxpayers, will personally bear the cost of any judgment; and/or (4) the size of any award should be tempered because of its ultimate source in public funds, or similar reference. If the District makes any such statements, during opening statements or at any other time, the Court will call a sidebar and inform the jury to disregard the assertion. However, it should be noted that this ruling will not affect any party's ability to raise evidence that the District is a governmental entity that accepts federal funding.[91]

---

[91] As a final note, the Court is baffled by the District's statement that "[t]his community is the true defendant in this case. . . . " Doc. 116, at 3. If the jurors in this case are also the true defendants of this lawsuit, then they should not be permitted to be on the jury. There would be a logical conflict for almost every potential juror in the Middle District and a change of venue would need to be sought. Such a result cannot be the intention of the District, so the Court will choose to simply disregard this statement.

## III.    DEFENDANT'S MOTIONS IN LIMINE

Defendant raises two arguments, in separate motions in limine that have not yet been addressed. Again, each issue that is raised will be addressed in turn.

### A.    Emotional Damages

Defendant's first independent motion in limine asks the Court "for an order precluding any statement, reference, or argument that Plaintiff is entitled to and should be awarded emotional distress damages, and to preclude any recovery of emotional distress damages by Plaintiff under Title IX."[92] Plaintiff counters that this request is an impermissible use of a motion in limine and to the extent it seeks to preclude certain evidence, that evidence would be admissible for other purposes.[93]

The Court agrees with both of Plaintiff's arguments. "Motions in limine are made prior to trial or the presentation of evidence in order to aid the clear presentation of evidence."[94] "It is well settled that '[m]otions in limine address evidentiary questions and are inappropriate devices for resolving substantive issues,' such as the sufficiency of the evidence to support a claim or defense."[95] Motions in limine are typically made "for the purpose of prohibiting opposing counsel from mentioning the existence of . . . matters so highly prejudicial to the moving party

---

[92]    Doc. 96, at 1.
[93]    *See* Doc. 112, at 4-7.
[94]    *United States v. Ramsey*, 2021 U.S. Dist. LEXIS 192115, at *1 (E.D. Pa. Oct. 5, 2021).
[95]    *Brooks v. State Coll. Area Sch. Dist.*, No. 4:22-CV-01335, 2023 WL 7130624 (M.D. Pa. Oct. 30, 2023) (Brann, C.J.) (quoting *Bowers v. Nat'l Collegiate Athletic Ass'n*, 563 F.Supp. 2d 508, 532 (D.N.J. 2008)).

that a timely motion to strike or an instruction by the court to the jury to disregard the offending matter cannot overcome its prejudicial influence on the jurors' minds."[96]

It appears apparent on the face of the motion, and subsequent briefing in support of it, that the District seeks a ruling of law that a 2022 United States Supreme Court case bars an entire category of damages.[97] This is not a request to aid in the clear presentation of evidence, as is the proper purpose of motions in limine.[98] While the District argues this is a distinction without a difference,[99] the Court believes this is the exact type of request for a substantive issue ruling that serves as an improper basis for a motion in limine.[100] For this reason alone, the Court has sufficient justification to deny the District's motion in limine.[101]

However, it is also important to note that "[e]vidence should only be excluded on a motion in limine if it is clearly inadmissible on all potential grounds."[102]

---

[96] *United States v. Davis*, 208 F.Supp. 3d 628, 632 (M.D. Pa. 2016) (citing *O'Rear v. Fruehauf Corp.*, 554 F.2d 1304, 1306 (5th Cir. 1977)).

[97] *See* Doc. 96; Doc. 97, at 3 (citing *Cummings v. Premier Rehab Keller*, P.L.L.C., 596 U.S. 212 (2022)).

[98] *United States v. Ramsey*, 2021 U.S. Dist. LEXIS 192115, at *1 (E.D. Pa. Oct. 5, 2021).

[99] *See* Doc. 122, at 1.

[100] *Brooks v. State Coll. Area Sch. Dist.*, No. 4:22-CV-01335, 2023 WL 7130624 (M.D. Pa. Oct. 30, 2023) (Brann, C.J.) (quoting *Bowers v. Nat'l Collegiate Athletic Ass'n*, 563 F.Supp. 2d 508, 532 (D.N.J. 2008)).

[101] *See Williams v. Pennsylvania Dep't of Corr.*, No. 2:22-CV-394, 2022 WL 1173195, at *1 (W.D. Pa. Apr. 20, 2022) ("any issues in the motion in limine that should be properly asserted through a timely Rule 50(a) motion for judgment as a matter of law will be denied without prejudice").

[102] *Hunt v. Drake*, No. 16-CV-1729, 2020 U.S. Dist. LEXIS 108003 (M.D. Pa. June 19, 2020) (citing *Feld v. Primus Techs. Corp.*, Civ. No. 4:12-1492, 2015 U.S. Dist. LEXIS 55262, at *1 (M.D. Pa. 2015)).

Plaintiff presents a strong argument that the evidence of emotional damages sought to be excluded remains admissible in relation to her negligence claim.[103] The Court agrees,[104] and believes that this provides a second justification to deny the District's motion.

For these reasons, this motion in limine will be denied without prejudice. The District may re-raise such arguments in a potential judgment as a matter of law at the close of Ms. Doe's case or during the jury charge conference.[105] If this issue is re-raised at either point, both parties may request that the Court review and rely on the briefs of this motion to aid its analysis.

### B.    Evidence of Grooming or Sex Abuse Outside of the School Setting

The District's final motion in limine asks that the Court "preclude evidence at trial of any reference, argument, or evidence of outside-of-school grooming or sex abuse between Plaintiff and her abuser."[106] They base this request on Rule 403 by arguing that it would be "unfairly prejudicial" and Rule 401 by arguing it is irrelevant.[107]

---

[103] *See* Doc. 112, at 6-8.

[104] The District seems to tacitly concede this point, as it does not rebut these arguments in their reply brief on this motion. *See generally* Doc. 122.

[105] *See Williams*, 2022 WL 1173195, at *2.

[106] Doc. 102.

[107] *See* Doc. 103, at 2; Doc. 123, at 1-2. As the District pointed out in its reply brief, Plaintiff seems to have misconstrued the basis of this motion. *See* Doc. 123, at 1-2. The District never set out to make a Rule 404(b) argument and the Court will not undertake an analysis under that Rule.

Initially, I will again note that an objection to this evidence under Rule 403 is premature. "Excluding evidence as being more prejudicial than probative at the pretrial stage is an extreme measure that is rarely necessary, because no harm is done by admitting it at that stage."[108] I have already explained that this is not a case where the Court has before it "a record complete enough on the point at issue to be considered a virtual surrogate for a trial record."[109] That is the sole requirement "to exclude evidence under Rule 403 at the pretrial stage," and it is clear that it is not met in this case. Therefore, Rule 403 will not bar this evidence.

Under the Federal Rules of Evidence, "the bar for what constitutes relevant evidence is low."[110] Rule 401 establishes that the test for whether a piece of evidence is relevant " is whether the evidence has '*any tendency* to make a fact more or less probable than it would be without the evidence,' where 'the fact is of consequence in determining the action.'"[111] It appears that this evidence easily clears the low bar of Rule 401 and is likely relevant to elements of Plaintiff's Title IX claim, among other aspects of the case.[112]

---

[108] *Id.*

[109] *Id.*

[110] *Forrest v. Parry*, 930 F.3d 93, 114 (3d Cir. 2019); *see also Failla v. City of Passaic*, 146 F.3d 149, 159 (3d Cir. 1998) ("The test of relevance under the Federal Rules of Evidence is low.").

[111] *Id.* (quoting Fed. R. Evid. 401 (emphasis added)).

[112] For example, as part of their Title IX claim, Plaintiffs will need to prove actual knowledge. *See Bostic v. Smyrna School Dist.*, 418 F.3d 355, 360 (3d Cir. 2005). If evidence can be proffered that shows that grooming actions were taken by Vassallo for an extended period of time, it would have at least a small tendency to make out the critical element of actual knowledge. That tendency, however small, is all that is required for evidence to be relevant.

Therefore, Rules 401 and 403 do not justify a finding that this evidence is inadmissible and this final motion in limine will be denied without prejudice.

## IV.    SUPPLEMENT TO THE DISTRICT'S PRETRIAL MEMORANDUM

Defendant writes in its pre-trial memorandum that the rulings on these motions in limine "will impact the manner in which this case is tried, in terms of the number of witnesses, exhibits, and ultimately the length of the actual trial."[113] No further analysis of these issues, or any other legal issues was provided in this document. These memoranda serve a vital role in assisting Court and other parties in their preparation for trial. In that vein, the Defendant will be directed to file a supplement to their previously filed pretrial memorandum that addresses the issues it concluded could not be addressed without decisions on these motions in limine. This document must be filed with the Court within fourteen days of the date of this Memorandum Opinion and Order.

---

[113] Doc. 127, at 9.

## V.    CONCLUSION

For the foregoing reasons, Plaintiff's motions in limine to introduce evidence of prior complaints and to preclude taxpayer impact arguments or references are granted. All other motions in limine are denied without prejudice.

An appropriate Order follows.

BY THE COURT:

*s/ Matthew W. Brann*
Matthew W. Brann
Chief United States District Judge

25